# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JOHN C. BLOM,

    Plaintiff,

v.

THE FLOODSUCKERS, LLC, et al.,

    Defendants.

3:12-cv-570-RCJ-WGC

**ORDER**

Currently before the Court is Defendant Anne Zoltani's Motion for Attorneys' Fees and Costs (#23).

## BACKGROUND

In October 2012, Defendants Wells Fargo Bank, N.A. and Randy J. Reynolds filed a petition for removal and attached Plaintiff John C. Blom's complaint that had been filed in the Second Judicial District Court in and for Washoe County, Nevada. (Pet. for Removal (#1); Compl. (#1-1) at 2-4). In the complaint, Plaintiff sued The Floodsuckers, LLC ("Floodsuckers"), a Colorado entity; Anne Zoltani, an attorney licensed in Colorado; Wells Fargo; and Randy J. Reynolds, a manager of a Wells Fargo Bank in Caughlin Ranch in Reno, Nevada. (Compl. (#1-1) at 2).

The complaint alleged the following facts. On September 24, 2012, Zoltani filed a writ of garnishment with Wells Fargo Bank. (*Id.* at 3). Wells Fargo seized "substantial monies" from Plaintiff's account on the ground that "some of the accounts were domesticated in California." (*Id.*). Plaintiff does not have bank accounts in Colorado and has "no monies belonging to Plaintiff in the State of Colorado." (*Id.*). The writ of garnishment was not

compliant with Colorado law. (*Id.*). On September 27, 2012, Plaintiff demanded that Wells Fargo voluntarily quash the writ because the writ had not been served by the Sheriff of Washoe County, had not been signed by the clerk of the county from which the writ had been issued, and was not compliant with Nevada procedural and due process standards. (*Id.*). Wells Fargo did not quash the writ and did not have an immediate or viable means for customers to dispute wrongful garnishment. (*Id.*). Reynolds had refused to help Plaintiff. (*Id.*).

The complaint alleged the following facts. (*Id.*). Zoltani had failed to follow the procedures set forth in NRS § 17.330, Uniform Enforcement of Foreign Judgments Act. (*Id.*). Plaintiff stated that unless the seized monies were immediately returned, he and his wife, who [were] both retirees, would suffer irreparable injury "because all of their payments for medical care, inclusive of doctors and prescriptions, and their mortgage and other household expenses [were] automatically drawn from the accounts seized." (*Id.*). Plaintiff sought: (1) expungement of the writ of garnishment; (2) a temporary restraining order, preliminary injunction, and permanent injunction against Zoltani and Floodsuckers from enforcing the judgment in Nevada unless they complied with Nevada law; (3) a mandatory injunction directing Wells Fargo to release the monies seized by virtue of the writ of garnishment and an order prohibiting Wells Fargo from returning information in response to the writ of garnishment. (*Id.* at 4).

The exhibits filed in this case demonstrate the following. According to the writ of garnishment, the document had been issued by a court in Steamboat Springs, Colorado, in the case of *Floodsuckers, LLC v. Blom*. (Writ of Garnishment (#1-1) at 8). Zoltani was Floodsucker's Colorado attorney. (*Id.*). On July 18, 2012, the Colorado court entered judgment for $76,045.92 plus attorney's fees of $11,605.23 for a total judgment of $87,651.15 for Floodsuckers excluding tax and costs. (*Id.*).

Plaintiff's ex parte state court TRO motion stated the following. (State TRO Mot. (#1-1) at 13). Plaintiff requested that he be restored all of the monies seized from his Wells Fargo account, that Wells Fargo be prohibited from returning any information required by page 2 of the writ of garnishment, and that Floodsuckers and Zoltani be enjoined from pursuing

garnishment or execution on the Colorado judgment in Nevada.  (*Id.*).  The motion stated that Wells Fargo had seized all of Plaintiff's accounts in excess of $89,000 which had resulted in the "complete unavailability to the Bloms of all their liquid assets."  (*Id.* at 14).  The motion stated that Plaintiff had approached Reynolds and that Reynolds had refused to identify an individual who might be responsible to customers for the filing of wrongful writs of garnishment.  (*Id.*).  The motion stated that it was "necessary to add the branch manager of Wells [Fargo] Caughlin Ranch Branch in order to allow Plaintiff to identify a live body with whom to serve process and an order expunging the writ."  (*Id.*).  The motion argued that the writ was void and unenforceable under Nevada law pursuant to NRS § 17.330.  (*Id.*).  The motion argued that the writ was also unenforceable under Colorado law.  (*Id.* at 15).

On October 5, 2012, Judge Brent Adams of the Second Judicial District issued a TRO requiring Wells Fargo to restore all of the monies seized from Plaintiff's Wells Fargo accounts to Plaintiff, enjoined Wells Fargo from returning any information required by page 2 of the writ, and enjoined Zoltani and Floodsuckers from pursuing garnishment or execution on the Colorado judgment in Nevada.  (State Court TRO Order (#1-1) at 32-33).  The TRO also stated that Plaintiff could withdraw no more than $40,500 from his Wells Fargo accounts provided that he post a bond in the amount of $40,500.  (*Id.*).

On October 22, 2012, Judge Adams held a hearing on the matter.  (Transcript (#4) at 34).  Wells Fargo's counsel stated that there was no need to domesticate the judgment in Nevada because the garnishment order had been issued by a Colorado court and served on Wells Fargo at one of its Colorado branches.  (*Id.* at 38).  At the conclusion of the hearing, Judge Adams extended the TRO for another 45 days from the date of the hearing and stated that at that time he would dismiss the case with prejudice for lack of jurisdiction.  (*Id.* at 71-72).  Judge Adams stated that a Colorado court should resolve the issues because the assets disgorged resulted from a lawsuit and writ issued by a Colorado court.  (*Id.* at 71).

In November 2012, this Court denied Plaintiff's motions to remand because diversity jurisdiction existed and Reynolds had been fraudulently joined.  (Order (#20) at 6).  This Court also granted Wells Fargo's motion to dissolve the state court TRO because Plaintiff had failed

3

to show a likelihood of success on the merits. (*Id.* at 8). This Court also granted Zoltani's motion to quash service and dismissed Zoltani for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). (*Id.* at 10). This Court found that it lacked both general and specific jurisdiction over Zoltani because she resided in Colorado, was a Colorado attorney, had never conducted business in Nevada, did not own property in Nevada, did not practice law in Nevada, and did not have an office in Nevada. (*Id.* at 9-10). Additionally, Zoltani had represented Floodsuckers in a Colorado lawsuit and all of her work and business activities had originated from her Colorado office for the benefit of her Colorado client. (*Id.*). Zoltani had not directed her conduct toward Nevada and had not engaged in Nevada-related activities. (*Id.* at 10).

The pending motion now follows.

## DISCUSSION

Zoltani moves for attorneys' fees and costs against Plaintiff and/or Plaintiff's counsel that she incurred in defending herself against Plaintiff's allegations pursuant to Fed. R. Civ. P. 54, Local Rules 54-1 through 54-16, and NRS § 18.010(2)(b). (Mot. for Fees (#23) at 1). Zoltani asserts that, as the prevailing party, she is entitled to attorneys' fees under § 18.010(2)(b) because the claim against her was brought or maintained without reasonable ground. (*Id.* at 3-4). Zoltani sought $3,505.00 in attorneys' fees to defend the case based on 19.5 hours billed[1] and $455.60 in nontaxable costs for attorney Crystal Herrera's plane ticket to Reno for a scheduled hearing. (*Id.* at 4-5; Exh. (#23-3) at 3). Zoltani addressed the Local Rule 54-16 factors and attached the declaration of attorney Joseph P. Garin and supporting exhibits. (Mot. for Fees (#23) at 5-7; Garin Decl. (#23-1); Exhs. (#23-2, 23-3, 23-4)).

In response, Plaintiff, counseled, filed a two-page opposition. (Opp'n to Mot. to Fees (#24) at 1-2). Plaintiff asserts that he had to include Zoltani in the lawsuit because she was an indispensable party. (*Id.* at 1). Plaintiff also argues that he was the prevailing party in state

---

[1] Zoltani asserts that this amount does not include attorneys' fees which have not been billed and reserves her right to supplement the motion to include outstanding fees. (Mot. for Fees (#23) at 5). The amount sought is based on fees billed from October 2, 2012 through October 31, 2012. (*See* Exh. (#23-2) at 8-10).

4

court because he acquired a TRO from Judge Adams. (*Id.*). Plaintiff argues that there is "no authority for the proposition that the granting of a motion to quash by a *Federal Judge* is a final disposition of a State Court proceeding giving rise to a right to attorneys' fees *under Nevada State Law*." (*Id.* at 2). Plaintiff asserts that Zoltani's motion for fees is prohibited by the *Rooker-Feldman* doctrine and that nothing makes Zoltani the prevailing party in this case. (*Id.*).

In reply, Zoltani asserts that federal courts apply state law with regard to attorneys' fees related to state law claims. (Reply to Mot. for Fees (#27) at 3). Zoltani argues that a defendant that prevails in a dispositive motion may be awarded attorneys' fees under NRS § 18.010 and that she did prevail in her motion to quash service of process and to dismiss under Fed. R. Civ. P. 12(b)(2), (5). (*Id.*). Zoltani notes that Plaintiff instituted the action against her and, thus, she had to defend herself. (*Id.* at 4). Zoltani also notes that Plaintiff does not dispute that this action was brought or maintained against her without reasonable ground and does not contest the reasonableness of the attorneys' fees sought. (*Id.*). Zoltani asserts that her attorneys' fees are now $13,442.50 based on a total of 75.90 hours billed.[2] (*Id.*). Zoltani attaches supporting documentation. (Exhs. (#27-1, 27-2)). Attorney Crystal Herrera spent 69.50 hours on the case at $175 an hour and attorney Joseph Garin spent 6.40 hours on the case at $200 an hour. (Garin Decl. (#27-1) at 3).

Under the *Erie*[3] doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996). A federal court awards attorneys' fees in accordance with state law when state substantive law applies. *Johnson v. Incline Vill. Gen. Imp. Dist.*, 5 F.Supp.2d 1113, 1114 (D. Nev. 1998). The calculation of the amount of the fee is a substantive state right. *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

---

[2] The reply includes fees from November 1, 2012 through January 23, 2013 which involves the work completed on the motion to quash. (Exh. (#27-2) at 2-6).

[3] *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Pursuant to NRS § 18.010(2), the court may make an allowance of attorneys' fees to a prevailing party, without regard to recovery sought, when:

> <u>the court finds that the claim</u>, counterclaim, cross-claim or third-party complaint or defense of the opposing party <u>was brought or maintained without reasonable ground or to harass the prevailing party</u>. The court shall liberally construe the provisions of this paragraph in favor of awarding attorney's fees in all appropriate situations. It is the intent of the Legislature that the court award attorney's fees pursuant to this paragraph and impose sanctions pursuant to Rule 11 of the Nevada Rules of Civil Procedure in all appropriate situations to punish for and deter frivolous or vexatious claims and defenses because such claims and defenses overburden limited judicial resources, hinder the timely resolution of meritorious claims and increase the costs of engaging in business and providing professional services to the public.

Nev. Rev. Stat. § 18.010(2)(b) (emphasis added).

An award of attorney's fees under NRS § 18.010(2)(b) is discretionary with the district court. *Semenza v. Caughlin Crafted Homes*, 901 P.2d 684, 687 (Nev. 1995). To support such an award, "there must be evidence in the record supporting the proposition that the complaint was brought without reasonable grounds or to harass the other party." *Id*. Such analysis depends on the actual circumstances of the case. *Id*. at 688. The Nevada Supreme Court has recognized that a claim is groundless if the complaint contains allegations which are not supported by any credible evidence at trial. *Id*.

In this case, the Court finds that Zoltani is a prevailing party in this case because she successfully had the case dismissed against her for lack of personal jurisdiction. *See Valley Elec. Ass'n v. Overfield*, 106 P.3d 1198, 1200 (Nev. 2005) (stating that a party can prevail under NRS § 18.010 if a party succeeds on any significant issue in litigation which achieves some of the benefit it sought in bringing the suit, counterclaim, or motion). The Court also finds that there is evidence in the record to support the proposition that Plaintiff brought the complaint against Zoltani without reasonable grounds in Nevada because no facts supported general or specific personal jurisdiction over her in Nevada. As such, the Court grants Plaintiff's motion for attorneys' fees pursuant to NRS § 18.010(2)(b).

With respect to the amount of fees, the Court recognizes that, in Nevada, the method upon which a reasonable fee is determined is subject to the discretion of the court which is tempered only by reason and fairness. *Shuette v. Beazer Homes Holdings Corp*., 124 P.3d

530, 548-49 (Nev. 2005). In determining the amount of fees to award, the Court is not limited to one specific approach. *Id*. at 549. However, the Court must consider the requested amount in light of the factors enumerated in *Brunzell v. Golden Gate Nat. Bank*, 455 P.2d 31 (Nev. 1969), which include the advocate's professional qualities, the nature of the litigation, the work performed, and the result. (*Id.*).

Here, the Court finds that Zoltani's attorneys used a partner-associate approach to complete work on her case and that Joseph Garin, a qualified law firm partner who focuses his practice on the defense of professional liability, used an associate at a lower rate to complete most of the work on this case. Additionally, the Court finds that Zoltani's motions were well-written, addressed pertinent legal issues, and cited relevant and accurate law to obtain a dismissal based on personal jurisdiction. The Court finds that the fees sought are reasonable and awards Zoltani attorneys' fees in the amount of $13,442.50. The Court denies the motion for costs. Zoltani has not cited to any Nevada law that permits the recovery of costs for an attorney's travel accommodations to attend a hearing in a case.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant Anne Zoltani's Motion for Attorneys' Fees and Costs (#23) is GRANTED in part and DENIED in part. The motion is granted in the amount of $13,442.50 for attorneys' fees but denied in the amount of $455.60 for nontaxable costs.

DATED: This 9th day of July, 2013.

_____
United States District Judge